UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MONTPELIER US INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 11-141-ART |
| v. | ) ) | **MEMORANDUM OPINION &** |
| JOHN COLLINS, et al., | ) ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

With great power comes great responsibility. This often-repeated Voltaire quote worked for Spider-Man, and it works for federal jurisdiction as well. The Declaratory Judgment Act gives a federal court the unique ability to assert jurisdiction at its discretion, but courts must be cautious when doing so overlaps with parallel state-court litigation. In this case, plaintiff Montpelier US Insurance Company asks the Court to retain jurisdiction over this declaratory judgment action while defendants John and Sandra Collins have identical claims pending in state court. After considering the necessary factors, there is no reason to retain jurisdiction over this action.

### BACKGROUND

On February 4, 2011, a fire burned down the business of John and Sandra Collins in Lackey, Kentucky. R. 11-1 at 1. The Collinses, who were insured by Montpelier US Insurance Company, filed a claim to recoup their losses, and Montpelier hired GAB Robins NA, Inc. and Dan Thornbury to investigate and adjust the claim. *Id.* at 2. After Thornbury visited the Collins property, Montpelier denied their claim. *Id.* Montpelier also filed a

lawsuit in federal court, asking for a declaration that it did not owe the Collinses for their losses. R. 1. The Collinses then sued Montpelier, GAB, Thornbury, and Jo Lynn Clemons, an adjuster employed by Montpelier, in Floyd Circuit Court. *See* Compl., *Collins v. Montpelier US Ins. Co.*, Pikeville Civil No. 11-166-ART (E.D. Ky. 2011), R. 1-1 ¶¶ 2–5. They also sued Citizens National Bank, the mortgagee of their now-defunct business property. *Id.* ¶ 6. In their state court complaint, the Collinses allege that Montpelier, Thornbury, GAB, and Clemons "willfully, wrongfully, maliciously, wantonly, recklessly, and intentionally" denied their claim in violation of Kentucky's Unfair Claims Settlement Practices Act, Consumer Protection Act, and Unfair Trade Practices Act. *Id*. ¶¶ 31–33.

On October 24, 2011, Montpelier filed a notice of removal, asserting federal diversity jurisdiction. Pikeville Civil No. 11-166-ART, R. 1. The notice acknowledged that the Collinses, Thornbury, and Citizens National Bank are all Kentucky citizens. Montpelier contended, however, that Thornbury's and Citizens's citizenships should be ignored for diversity purposes because the plaintiffs fraudulently joined them to the action. *Id.* ¶¶ 6–7. Specifically, Montpelier argued that Kentucky law does not allow the Collinses to assert bad-faith claims against an insurance adjuster like Thornbury and that the Collinses had not asserted any claims at all against Citizens National Bank. *Id.*, R. 15 at 5. The Collinses filed a motion to remand, *id.*, R. 7, and the Court granted it, *id.*, R. 16, finding that Kentucky law was ambiguous on whether a plaintiff can sue an insurance adjuster on a bad-faith claim. Following that decision, the Collinses filed a motion to dismiss the declaratory action originally filed by Montpelier. *Montpelier US Ins. Co. v. Collins*, Pikeville Civil No. 11-141-ART (E.D. Ky. 2011), R. 11.

2

## DISCUSSION

### I. The Declaratory Judgment Statute

The declaratory judgment statute provides that federal courts "*may*" enter declaratory judgments in "case[s] of actual controversy." 28 U.S.C. § 2201(a) (emphasis added). Accordingly, federal jurisdiction under the statute is not the same as diversity or federal-question jurisdiction because the statute "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). With this discretion comes many considerations; the most important among them is whether exercising jurisdiction interferes with state-court litigation. In fact, the Supreme Court advised federal courts to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of . . . state court litigation." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Sixth Circuit has taken this advice to heart, "h[olding] on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007).

Montpelier starts at a disadvantage because it asks the Court to decide the same legal questions that are pending in Kentucky state court. Foremost among them: whether the insurance policy that the Collinses had with Montpelier provides coverage for fire damage to the Collinses' business. Although this fact does not *require* the Court to dismiss this declaratory action, district courts rarely entertain an insurance company's declaratory

3

judgment action to resolve coverage issues that are squarely presented in an ongoing state-court case. *See Govt. Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."). The Sixth Circuit has repeatedly advised that the best course is to respect the state court's ability to handle the matter. *See Manley, Bennet, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court."); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 816–17 (6th Cir. 2004) (questioning "the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner") (quoting *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)).

## II. The Sixth Circuit's Five-Factor Test

The Sixth Circuit has provided a five-factor test for deciding whether to exercise jurisdiction over declaratory judgment actions. The Court must determine whether (1) the declaratory action would settle the controversy; (2) a declaratory judgment would increase friction between federal and state courts; (3) an alternative, better remedy is available; (4) a declaratory judgment would serve a "useful purpose in clarifying the legal relations in issue"; and (5) the declaratory remedy is being sought merely to "provide an arena for a race for res judicata." *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Applying the factors in this case supports deference to the state court action.

**Factor One:** Resolving this declaratory judgment action will not settle the controversy. *Travelers Indem. Co.*, 495 F.3d at 271–72. The focus of this factor is not whether issuing a declaratory judgment would settle the controversy immediately before the Court, but whether doing so would settle the "ultimate controversy" in the underlying state court litigation. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 788 (E.D. Ky. 2008); *see Travelers Indem. Co.*, 495 F.3d at 272. Montpelier's requested declaratory judgment would not do so.

First, Montpelier's complaint leaves out some of the parties from the state court case. *See Bituminous Cas. Corp.*, 373 F.3d at 814. The Collinses also sued GAB, Thornbury, Jo Lynn Clemons, and Citizens National Corporation. Although Montpelier protests that the Collinses' claims against Clemons and Citizens National should either be dismissed as frivolous or severed from the state court action, this Court already declined to do so when it remanded the Collinses' lawsuit back to state court. *See Collins*, Pikeville Civil No. 11-166-ART, R. 16. To date, the state court has not dismissed these parties. Thus, even if this Court were to grant declaratory judgment in Montpelier's favor, such judgment would not resolve the entire litigation.

Second, Montpelier's declaratory judgment action may not even settle the state-court controversy between the Collinses and Montpelier. The Collinses also allege that Montpelier acted in bad faith in refusing to settle with them. Although a declaratory judgment in favor of Montpelier would likely resolve the bad faith claim—if Montpelier had no obligation to pay, then it had no obligation to settle—arguing that this favors jurisdiction only looks at one side of the coin. A ruling against Montpelier would compel the parties to return to state court

5

to resolve the remaining bad faith and unfair trade claims. A declaratory judgment action that would settle the underlying state-court litigation only if the Court rules a certain way still poses an undue risk of forcing the parties to engage in fractured, piecemeal litigation and thus weighs against exercising jurisdiction.

**Factor Two:** A declaratory judgment in this case could increase friction between federal and state courts. There is a lawsuit currently pending in the Floyd Circuit Court that presents the exact same questions Montpelier asks the Court to decide here. Of course, the "mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). Rather, the Sixth Circuit has identified three "sub-factors" to guide district courts in determining whether the potential for friction is too great. Here, those three sub-factors support dismissal.

The first sub-factor is "whether the underlying factual issues are important to an informed resolution of the case." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008). The Sixth Circuit's primary concern under this sub-factor is whether the "issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* Conflicting factual findings is not a concern in this case because the construction of the Collinses' insurance policy is a question of law. *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) ("As a general rule, the construction and legal effect of an insurance contract is a matter of law for the court."). This sub-factor therefore does not indicate that there will be friction with the state court.

6

The second sub-factor, however, does suggest friction. The concern of this sub-factor is whether the state court is in a better position to evaluate the issues than the federal court. *Scottsdale Ins. Co.*, 513 F.3d at 560. This case involves pure questions of state law "with which Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous Cas. Co.*, 373 F.3d at 815; *see Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 818 (1989) (recognizing that "question[s] of state law [are] within the special expertise of the [state] courts"). The state-law questions are not particularly novel, but novelty is not the only concern. In *Bitumious Casualty Corp.*, 373 F.3d at 815, for example, the Sixth Circuit held that the Kentucky court was in a better position to resolve questions of Kentucky law without immediately pointing to the novelty of the state-law issues. The court proceeded to say the state-law issues were novel, but only as an additional reason that the state court was in a better position to resolve the matter. *Id.*

Finally, the third sub-factor—"whether there is a close nexus between underlying factual and legal issues and state law and/or public policy," *Scottsdale Ins. Co.*, 513 F.3d at 560—also suggests friction with the state court. This is a case about an insurance contract, which the state "regulate[s] . . . for the protection of [its] residents." *Id.* at 561. Interpreting the contract will necessarily implicate state insurance-law policies, a recognized source of friction. *See, e.g., Travelers Indem. Co.*, 495 F.3d at 273.

All together, the three sub-factors indicate that entertaining Montpelier's declaratory judgment suit could increase friction with the state courts and encroach on state authority. Although there is no risk of conflicting factual findings, the legal issue presented—the

7

interpretation of an insurance contract—is a pure question of state law that is intimately intertwined with the state's regulation of the insurance industry.

**Factor Three:** Montpelier also has an alternative, better remedy in state court. *Scottsdale Ins. Co.*, 513 F.3d at 561–62. Montpelier can simply argue in state court that its insurance policy did not cover the fire. Or, if Montpelier so chooses, it may be able to institute a separate declaratory judgment action in Kentucky state court under Ky. Rev. Stat. § 418.040. *See Scottsdale Ins. Co.* at 562. Kentucky courts are the experts on Kentucky law and thus provide a better forum for this state-law contract dispute. *See Travelers Indem. Co.*, 495 F.3d at 272. Additionally, filing the declaratory judgment action in state court would avoid the "confusing problems of scheduling, orderly presentation of fact issues and res judicata" that inevitably arise when separate courts hear the same case. *Grange*, 565 F. Supp. 2d at 791 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 812).

**Factor Four:** Deciding this case would not serve a truly "useful purpose" by clarifying legal relationships among the parties. *See AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004); *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas. Co.*, 177 F.2d 942, 944 (6th Cir. 1949). Resolving the declaratory judgment action may clarify the legal relations between the Collinses and Montpelier and terminate the immediate dispute between them. But remember that clarification must serve a "useful purpose." *See AmSouth Bank*, 386 F.3d at 786. Here, it would not be useful. The state court can also clarify these very same issues—probably better given its state-law expertise. *See id.* The Court knows of no reason why the "declaratory plaintiff will suffer injury unless legal relations are clarified" here rather than in the state-court litigation. *Id.*

Ultimately, keeping this case would do little but "cause [both the Collinses and Montpelier] to engage in litigation on two fronts." *Grange*, 565 F. Supp. 2d at 785 (citing *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). As the Sixth Circuit recognized in *Bituminous Cas. Corp.*, 373 F.3d at 813–14, when a federal court decides a declaratory judgment action presenting the exact same issues as those presented in a state court proceeding, there is simply no good result. "The federal court could either reach the same conclusions as the state court, in which case the declaration would have been unnecessary . . . or the federal court could disagree with the state court, resulting in inconsistent judgments." *Id.* Either way, "the declaratory judgment action in federal court [] serve[s] no useful purpose." *Id.* This factor supports dismissal.

**Factor Five:** The last factor is whether Montpelier is seeking the declaratory judgment merely for the purpose of providing "an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326. This factor is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before'" the "natural plaintiff," i.e. the insured, has filed. *Scottsdale Ins. Co.*, 513 F.3d at 558 (quoting *AmSouth Bank*, 386 F.3d at 788). The Sixth Circuit has consistently warned district courts to be cautious when an insurance company files a declaratory action before the insured files its suit because allowing such actions to go forward "can deter settlement negotiations and encourage races to the courthouse." *See AmSouth Bank*, 386 F.3d at 788 (listing cases).

Here, Montpelier filed their declaratory action before the Collinses filed their state court action. R. 11-1 at 2–3. In fact, the day Montpelier filed this action, September 9, 2011, was the very same day that it denied the Collinses' claim. R. 17-1 at 1. Not allowing the

9

insured any opportunity to file suit would normally be strong evidence of procedural fencing. *See AmSouth Bank*, 386 F.3d at 789. Montpelier, however, stated that its motive was to quickly clarify its legal relationship with the Collinses in order to avoid a bad faith claim. On its face, this might present a legitimate reason for immediately filing the declaratory action. But even giving Montpelier the benefit of the doubt does not tip this factor in favor of jurisdiction. At best, this factor is neutral. *See Travelers Indem. Co.*, 495 F.3d at 272 ("Although no improper motive prompted this action, this factor is neutral.").

## CONCLUSION

Ultimately, these factors strongly favor dismissal. The first four weigh in favor of declining to exercise jurisdiction, and under a best-case scenario for Montpelier, the last one is neutral. Taking into account the preference for respecting state courts' jurisdiction over these matters, the best use of this Court's "broad discretion" is to dismiss Montpelier's declaratory judgment action. *NGS American, Inc. v. Jefferson*, 218 F.3d 519, 526 (6th Cir. 2000).

Accordingly it is **ORDERED** that the Collinses' motion to dismiss, R. 11, is **GRANTED**. This case is **STRICKEN** from the Court's active docket.

This the 22nd day of February, 2012.



Signed By:
*Amul R. Thapar* AT
United States District Judge